UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON


LIQUIDATING TRUSTEE OF THE
APP FUELS CREDITORS TRUST,

      Plaintiff,


v.                                    Civil Action No. 2:13-30266


WEST VIRGINIA ALLOYS, INC. and
GLOBE METALLURGICAL, INC. and
GLOBE SPECIALTY METALS, INC. and
WVA MANUFACTURING, LLC and
DOW CORNING CORPORATION

      Defendants.



<u>MEMORANDUM OPINION AND ORDER</u>


      Pending is the plaintiff's motion "FOR JUDICIAL DETERMININATION OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO REMAND FOR LACK OF DIVERSITY OF CITIZENSHIP [('motion to remand')]," filed December 20, 2013, and the motion to dismiss filed January 10, 2014, by defendant Dow Corning Corporation ("Dow").

      On March 18, 2014, the court directed the parties to submit supplemental briefing.  That briefing concluded with a reply brief filed April 7, 2014.

I.

A.   The Parties and the Underlying and Present Litigation

This is an action to recover and avoid alleged fraudulent transfers between defendants West Virginia Alloys, Inc. ("WV Alloys"), WVA Manufacturing, LLC ("WVA"), Globe Metallurgical, Inc. ("GMI"), Globe Specialty Metals, Inc. ("GSM"), and Dow Corning Corporation, pursuant to the West Virginia Uniform Fraudulent Transfers Act ("Act"), West Virginia Code 40-1A-1 et seq.

Plaintiff is the Liquidating Trustee ("Trustee") of the App Fuels Creditors Trust ("Creditors Trust").  The Trustee oversees the Creditors Trust, which was established under the Joint Plan of Orderly Liquidation and Distribution (the "Plan") in certain bankruptcy cases jointly administered with Appalachian Fuels, LLC, (the "bankruptcy case") in the United States Bankruptcy Court for the Eastern District of Kentucky.

The Trustee is an Illinois citizen.  The Creditors Trust beneficiaries are citizens of multiple states, including West Virginia, Ohio, New York, and Michigan.  WV Alloys is a Delaware corporation with its principal office in West Virginia. GMI is a Delaware corporation with its principal office in Ohio.

2

GSM is a Delaware corporation with its principal office in New York.  WVA is a Delaware corporation with its principal office in West Virginia.  Dow is a Michigan entity.

On June 11, 2009, three creditors of debtor Appalachian Fuels, LLC, filed the bankruptcy case through an involuntary petition for relief under Chapter 7.  At that time, the debtor's estate held claims against WV Alloys for avoidance and recovery of preferential transfers ("claims").  On July 14, 2009, the United States Trustee appointed an Unsecured Creditors Committee ("Committee").

At all relevant times WV Alloys, WVA, GMI, and GSM were controlled, directly or indirectly, by three individuals. They are Jeff Bradley, Malcolm Appelbaum, and Stephen Lebowitz. On September 25, 2009, after the claims arose, WVA was formed. It is owned and controlled by these same three individuals.  On October 28, 2009, WV Alloys entered into an Asset Contribution Agreement and Membership Interest Subscription Agreement ("agreement") with GMI and WVA.  Pursuant to the agreement, WV Alloys transferred all, or substantially all, of its operating assets to WVA in exchange for 89.36 percent of the aggregate total of all membership interests in WVA ("membership interests").  GMI received the other 10.64 percent of the membership interests. Pursuant to the agreement, WVA did not

3

assume any liability related to any pending or threatened litigation or other claim, action, or proceeding against GMI or WV Alloys.

On October 30, 2009, the Board of Directors for WV Alloys declared a "dividend" to its sole shareholder, GMI, in the form of all the membership interests, which, as noted, comprised all or substantially all of WV Alloys' assets as of the membership interest transfer date.  WV Alloys received no consideration in exchange for the membership interest transfer to GMI.

Also on October 30, 2009, the Board of Directors of GMI declared a dividend to its sole shareholder, GSM, in the form of 100% of the membership interests it earlier received in WVA.  On November 5, 2009, GSM sold 49% of its newly acquired membership interests in WVA to Dow.  Additionally, Dow was listed as a party to receive notices under the October 28, 2009, agreement.

The Trustee alleges that the transfers described above were made in contravention of the Act.  Specifically, it contends that the transactions recited above had the effect of unlawfully removing substantially all of the assets of WV Alloys.  An offshoot of that effect was that WV Alloys became

4

insolvent.  On April 11, 2011, the bankruptcy court entered an agreed order in the bankruptcy case conferring standing on the Committee to pursue recovery actions, including the claims, on behalf of the debtor's estate.

On June 28, 2011, consistent with that grant of authority, the Committee instituted an adversary proceeding to avoid the alleged unlawful transfers.  On January 24, 2012, the Trustee was substituted as the plaintiff in the adversary proceeding.  On June 29, 2012, the bankruptcy court entered an agreed judgment for the Trustee and against WV Alloys in the amount of $125,000.

On October 25, 2013, the Trustee instituted this action in the Circuit Court of Fayette County.  The second amended complaint alleges two claims under the Act.  It requests, <u>inter</u> <u>alia</u>, the following relief: (1) a declaration that the transfers made by WV Alloys be annulled and set aside, along with the "dividends" paid by WV Alloys and GMI, (2) an award of exemplary damages, and (3) prejudgment attachment of the assets transferred.  On November 26, 2013, the defendants removed based upon diversity grounds.

On December 20, 2013, the Trustee moved for remand. It asserts that there is a substantial legal issue respecting

subject matter jurisdiction.  That issue concerns who the court counts for diversity purposes in the trust context.  As more fully discussed below, the courts of appeal have reached three different conclusions on the point when a trust sues or is sued. The disputed legal issue actually turns on the authority of the Trustee.  The Creditors Trust Agreement sets up the Trustee's powers, which are enumerated in the following section.

B.   The Trust Architecture Respecting Trustee Powers

The Creditors Trust Agreement discloses the scope of the Trustee's powers.  The applicable sections are set forth below:

Section 1.1:

"[T]he Liquidating Trust, through the Liquidating Trustee, will do the following: . . . (b) litigate and enforce all Causes of Action, claims and interests belonging to the Debtors, Debtors in Possession and/or the Estates . . . ."

Section 1.3:

"In connection with the exercise of its powers, the Liquidating Trustee may use the name or such variation thereof as it sees fit, and may transact the affairs of the Liquidating Trust in such name."

Section 1.4:

"Debtors hereby grant, release, transfer, convey and deliver to the Liquidating Trustee and its successors the Debtors' Assets, to be held in trust and to be applied as specified in the Plan, the Confirmation Order, and this Liquidating Trust Agreement, the Liquidating Trust Assets."

Section 1.5:

"The Liquidating Trustee agrees to receive, hold, administer and distribute the Liquidating Trust Assets and the income derived therefrom, and to reconcile, administer and satisfy Claims pursuant to the terms of the Plan, the Confirmation Order and this Liquidating Trust Agreement."

Section 3.4:

"The Liquidating Trustee will distribute at least annually to the Beneficiaries the net income of the Liquidating Trust plus all net proceeds from the liquidation of the Liquidating Trust Assets in excess of the amounts reasonably necessary to maintain the value of the Liquidating Trust Assets or to meet claims or contingent liabilities (including Disputed Claims)."

Section 4.2:

"The Liquidating Trustee's rights and authority include, without limitation, all of the following:

(a) to hold legal title to any and all rights of the holders of Liquidation Trust Interests in or arising from the Liquidation Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Liquidation Trust . . . .

(b) in consultation with the Trust Representative, to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, (i) commencing, prosecuting or settling causes of action, . . . (iii) asserting claims, defenses, offsets and privileges, . . . .

. . . .

(d) receive, control, manage and dispose of all Liquidating Trust Assets for the benefit of the Beneficiaries who may receive distributions under the Plan;"

(e) act as custodian of the Liquidating Trust Assets

and liquidate and reduce such assets to cash at such
time as the Liquidating Trustee deems appropriate to
accomplish the purpose of the Liquidating Trust, in
accordance with the terms of the Plan and the
Liquidating Trust Agreement;

. . . .

(h) employ, supervise and compensate attorneys,
accountants, financial advisors and other
professionals or other persons retained to represent
the interests of and serve on behalf of the
Liquidating Trust (the 'Trust Professionals') and
waive any conflicts of interest as deemed necessary or
appropriate in its discretion.

. . . .

(m) prosecute, settle, dismiss, abandon or otherwise
dispose of any and all Causes of Action of the Debtors
or their Estates constituting Assets . . . .

. . . .

(r) exercise all powers and rights, and take all
actions contemplated by or provided for under this
Liquidating Trust Agreement; and

(s) take any and all other actions necessary or
appropriate to implement or consummate the Plan and
the provisions of this Liquidating Trust Agreement.

Section 6.5: "Except as expressly provided in the Liquidating
Trust Agreement, the Plan or the Confirmation Order, a
Beneficiary does not have standing to direct the Liquidating
Trustee to do or not to do any act or to institute any action or
proceeding at law or in equity against any party (other than the
Liquidating Trustee) upon or with respect to the Liquidating
Trust Assets."

These provisions reflect precisely what one would

expect in this setting.  The Trustee is imbued with a broad

8

swath of authority to gather up, hold, and distribute trust assets.[1]

The Trustee -- the superintendent of the operative pleading and its style -- curiously questions in its reply brief whether it is authorized to proceed. (See, e.g., Pl.'s Reply at 7 ("[I]t appears that the App Fuels Creditors Trust is the real party in interest in this civil action, and not the Liquidating Trustee.")). It notes the Plan contains a provision that "inconsistencies" between the Creditors Trust Agreement and the Plan are resolved by the Plan. It then notes Plan provisions that, inter alia, appear to (1) vest title to trust assets in the trust, (2) impart supervisory authority to the Trust Representative, and (3) create trust asset ownership rights in the beneficiaries as well.[2]

---

[1] The court notes references in the Creditors Trust Agreement to an entity known as the Trust Representative. The Trust Representative is The Dayton Power & Light Company, an Ohio citizen. The Trustee retains "the sole discretion to make decisions on behalf of the" Trust "and is not bound to follow any recommendations made by the Trust Representative." (Sec. 8.2). If an action involves more than $500,000 or any officers, directors, or other insiders of the debtors or their respective professionals, the Trust Representative has enhanced authority. Neither of those circumstances are present here and, in any event, the Trustee may still proceed in good faith with the approval of the bankruptcy court in the event of a disagreement between the Trustee and the Trust Represenative. For these reasons, the court does not consider the Trust Representative's citizenship.

[2] The court need not reach the issue of whether the

While the Plan does appear to control when interpretive conflicts arise, two considerations overcome the Trustee's implicit misgivings about its ability to proceed. First, the Trustee's authority concerning trust assets and its ability to prosecute this action are, as noted, clearly spelled out in the Creditors Trust Agreement.  Second, and of utmost importance, the Creditors Trust Agreement is "incorporated into th[e] Plan as if set out fully" therein.  (Plan Sec. 6.3).  This incorporation by reference means that the Creditors Trust Agreement and the Plan are not two separate documents with one paramount over the other.  They are one and the same.  Inasmuch as the Trustee possesses the authority set out heretofore, it is authorized to proceed with this action and is properly deemed to be the real party in interest.

The choice, in this jurisdictional setting, to proceed with the Trustee as the proper party is also consistent with binding precedent, especially where the incorporation by reference discussed above has resulted in a hopelessly muddled quagmire concerning who, or what, is vested with authority to sue.  See, e.g., Hartley v. CSX Transp., Inc., 187 F.3d 422, 425

---

Trustee's institution of this action, followed by its apparent change of course on the real party in interest issue, warrants application of judicial estoppel principles.

(4th Cir. 1999) ("Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to <u>accept the parties joined on the face of the complaint unless joinder is clearly improper</u>.") (emphasis added).

II.

A.    Motion to Remand

As noted by the parties, there presently exists a split of authority concerning the citizenship of a trust for diversity purposes.  The discussion begins with the decision in <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458 (1980).  In <u>Navarro</u>, the question was whether the trustees of a business trust could invoke diversity jurisdiction on the basis of their own citizenship rather than that of the trust's beneficial shareholders.  The declaration of trust provided the trustees exclusive authority over the <u>res</u> "'free from any power and control of the Shareholders, to the same extent as if the Trustees were the sole owners of the Trust Estate in their own right. . . .'"  <u>Id.</u> at 459.  They were also authorized to compromise lawsuits relating to the trust's affairs.

11

The trustees lent $850,000 to a firm in return for a promissory note payable to the trustees.  Part of the security for the note was a bank commitment letter from Navarro Savings Association agreeing to lend the firm $850,000 to cover its obligation to the trustees.  The trustees were ultimately forced to demand Navarro make good on the promised loan.  The demand was refused.  A breach of contract action followed by the trustees against Navarro in a federal action based upon diversity of citizenship.  While the trustees and Navarro were diverse, subject matter jurisdiction was at risk if the trust shareholders citizenship was considered in the mix.

The Supreme Court first recited the now-familiar rule respecting unincorporated associations:

> Although corporations suing in diversity long have been "deemed" citizens, . . . unincorporated associations remain mere collections of individuals. When the "persons composing such association" sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court. Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900) (limited partnership association); see Steelworkers v. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) (labor union); Chapman v. Barney, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889) (joint stock company).

Id. at 461.  Based upon this line of authority, Navarro asserted that the real parties to the lawsuit were the shareholders and not the trustees.

12

The Supreme Court, however, observed that a trustee is a real party in interest for diversity purposes when it holds the customary powers to keep, manage, and dispose of assets for the benefit of others.  The trustees in Navarro possessed those powers.  Additionally, the shareholders were deemed to lack control over the disposition of the case or the power to intervene in the affairs of the trust except in extraordinary situations.  Those observations led to the following ruling:

> We conclude that these respondents are active trustees whose control over the assets held in their names is real and substantial. . . . The respondents are not "naked trustees" who act as "mere conduits" for a remedy flowing to others.  They have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy. For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries. We find no reason to forsake that principle today.

Id. at 465-66.

The next step development arose in Carden v. Arkoma Associates, 494 U.S. 185 (1990).  In Carden, Arkoma Associates ("Arkoma"), an Arizona limited partnership, sued two Louisiana citizens in federal court based upon diversity grounds.  The Louisiana citizens moved to dismiss, asserting that one of Arkoma's limited partners shared their Louisiana citizenship. The Supreme Court considered whether the citizenship of the limited partners counted for diversity purposes.

13

The majority opinion noted that Supreme Court precedent "firmly resisted" extending the single entity treatment of corporations as citizens to other entities.  It noted multiple instances where that reluctance was displayed, including Chapman v. Barney, 129 U.S. 677 (1889).  Id. at 189. In Chapman, the court found the citizenship of a joint stock company subject to the rules governing partnerships, the citizenship of which consists of the citizenship of all of its members.  The analysis led to an application of settled law:

> In sum, we reject the contention that to determine,
> for diversity purposes, the citizenship of an
> artificial entity, the court may consult the
> citizenship of less than all of the entity's members.
> We adhere to our oft-repeated rule that diversity
> jurisdiction in a suit by or against the entity
> depends on the citizenship of "all the members,"
> Chapman, 129 U.S., at 682, 9 S.Ct., at 427, "the
> several persons composing such association," Great
> Southern, 177 U.S., at 456, 20 S.Ct., at 693, "each of
> its members," Bouligny, 382 U.S., at 146, 86 S.Ct., at
> 273.

Carden, 494 U.S. at 195-196.

When Arkoma attempted to rely upon Navarro as an exception to the "Chapman tradition," the majority opinion categorically rejected the attempt:

> Navarro, in short, has nothing to do with the Chapman
> question, except that it makes available to respondent
> the argument by analogy that, just as business reality
> is taken into account for purposes of determining
> whether a trustee is the real party to the
> controversy, so also it should be taken into account
> for purposes of determining whether an artificial

14

entity is a citizen. That argument is, to put it
mildly, less than compelling.

_Navarro_ had nothing to do with the citizenship of the
"trust," since it was a suit by the trustees . . . .

_Carden_, 494 U.S. at 191-92, 193.

The interpretation of these cases has led to the
development of three varying approaches to trust citizenship.
The first approach commands a bare majority.  It results in the
court treating the citizenship of the trustee as conclusive on
the matter.  _See_ _Hicklin Eng'g, L.C. v. Bartell_, 439 F.3d 346,
348 (7th Cir. 2006); _Johnson v. Columbia Props. Anchorage, LP_,
437 F.3d 894, 899 (9th Cir. 2006).

The second approach, adopted only by the United States
Court of Appeals for the Eleventh Circuit, treats the
citizenship of the beneficiaries as conclusive. _Riley v. Merrill_
_Lynch, Pierce, Fenner & Smith, Inc._, 292 F.3d 1334, 1338 (11th
Cir. 2002).  The third approach, adopted only by the United
States Court of Appeals for the Third Circuit, treats the
citizenship of both the trustee and the beneficiaries as
controlling the citizenship of a trust.  _Emerald Investors Trust_
_v. Gaunt Parsippany Partners_, 492 F.3d 192, 203 (3rd Cir. 2007).

It is noteworthy here, however, that the Trustee
instituted this action in its own name.  As noted in _Emerald_,

15

"the test with respect to the citizenship of an entity is
distinct from the test applied with respect to the citizenship
of trustees if they sue in their own names. When trustees sue in
their own names it is critical that they be the real parties to
the controversy." Emerald, 492 F.3d at 198 n.10. In further
elaborating upon the impact of both Navarro and Carden in this
trustee-as-plaintiff setting, the panel in Emerald accurately
summed up the state of the law:

> [I]n light of Navarro and Carden, the Supreme Court
> has established the following rules. In a suit by or
> against the individual trustees of a trust, where the
> trustees "possess[ ] certain customary powers to hold,
> manage and dispose of assets," their citizenship, and
> not that of the trust beneficiaries, is controlling
> for diversity of citizenship purposes. The rule,
> however, is different when an artificial entity sues
> or is sued in its own name. In that situation, because
> artificial entities, unlike corporations, are not
> "citizens" under 28 U.S.C. § 1332, diversity
> jurisdiction by or against an artificial entity
> depends on the citizenship of "all the members."

Id. at 200-01 (citations omitted).

It is thus apparent that the court need not choose
among the three approaches for arriving at the citizenship of a
trust. Inasmuch as the Trustee instituted this action in its
own name, and that it possess the customary powers to hold,
manage and dispose of assets, its citizenship is controlling
under Navarro for diversity-of-citizenship purposes.

16

As noted, the Trustee is an Illinois citizen.  It does not share citizenship with any of the Creditors Trust beneficiaries, WV Alloys, GMI, GSM, WVA, or Dow.  Inasmuch as the parties are diverse, the court ORDERS that the motion to remand be, and hereby is, denied.  The notice of removal properly alleges subject matter jurisdiction on diversity grounds pursuant to 28 U.S.C. §§ 1332 and 1441.

B.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).

17

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Claims under the Act sound in fraud. The parties concede as much. Those claims are thus subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a pleader to allege "'with particularity the circumstances constituting fraud.'" Fed. R. Civ. P. 9(b). The referenced circumstances "include '"the time, place, and contents of the false representations, as well as the

18

identity of the person making the misrepresentation and what he obtained thereby."'" <u>Spaulding v. Wells Fargo Bank, N.A.</u>, 714 F.3d 769, 781 (4th Cir. 2013) (quoting, in part, <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999)).

Foremost among several arguments, Dow asserts that the second amended complaint fails to state a claim against it.  It contends that the Trustee's sole allegation against it stems from Dow's acquisition of a portion of the membership interests in WVA Manufacturing from GSM.  At the same time, it notes that Dow's acquisition of the WVA Manufacturing interest was not a transfer without consideration but rather a sale.

The Trustee responds that it has pled its claims against Dow with the requisite degree of particularity.  The rhetoric in its brief, however, must yield to the actual allegations found in the operative pleading.  Those allegations, as they relate to Dow, are as follows:

> Dow "was listed as a party to receive notices under the" agreement. (Sec. Am. Compl. ¶ 18).

> Before the transfers under the agreement, Dow "knew or should have known that the [c]laims were going to be asserted against WV Alloys."  (Sec. Am. Compl. ¶ 21).

> The transfers "were engaged in by the Defendants to shield WV Alloys' assets from the [c]laims while, at the same time, maintaining ownership and control of

19

those very same assets in WVA, an affiliated legal entity." (Sec. Am. Compl. ¶ 23).

"The Defendants engaged in a series of structured and orchestrated transactions . . . to transfer and shield assets of WV Alloys from" the claims in violation" of the Act. (Sec. Am. Compl. ¶¶ 38).

At the outset, the generic use of the term "Defendants" is troubling. Elsewhere in the operative pleading the term is plainly directed only toward WV Alloys, GMI, GSM and WVA. (See, e.g., Sec. Am. Compl. ¶¶ 4, 5). Assuming the term was intended to refer to Dow as well, however, the well-pleaded factual allegations of the operative pleading would only give rise to a belief that Dow was entitled to receive notices of the transfers. That minimalistic contention will not suffice for purposes of pleading a claim under the Act, especially in light of the rigorous Rule 9(b) standards.

The court, accordingly, ORDERS that the motion to dismiss be, and hereby is, granted conditionally, with the Trustee given leave to plead anew its claims against Dow under the Act on or before May 10, 2014.

III.

Based upon the foregoing discussion, it is ORDERED as follows:

1.    That the Trustee's motion to remand be, and hereby is, denied;

2.    That Dow's motion to dismiss be, and hereby is, granted conditionally;

3.    That the Trustee be, and hereby is, given leave to plead anew its claims against Dow under the Act on or before May 10, 2014.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED: April 24, 2014

John T. Copenhaver, Jr.
United States District Judge

21