UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LIQUIDATING TRUSTEE OF THE APP FUELS CREDITORS TRUST,

        Plaintiff,

v.                                  Civil Action No. 2:13-30266

WEST VIRGINIA ALLOYS, INC. and GLOBE METALLURGICAL, INC. and
GLOBE SPECIALTY METALS, INC. and WVA MANUFACTURING, LLC and
DOW CORNING CORPORATION

        Defendants.


MEMORANDUM OPINION AND ORDER


Pending are the separate motions to dismiss filed by West Virginia Alloys, Inc. ("WV Alloys"), WVA Manufacturing, LLC ("WVAM"), Globe Metallurgical, Inc. ("GMI"), and Globe Specialty Metals, Inc. ("GSM") (collectively "the Globe defendants"), on May 27, 2014, and defendant Dow Corning Corporation ("Dow"), on May 23, 2014.


I.


This is an action to recover and avoid alleged fraudulent transfers between defendants WV Alloys, WVAM, GMI, GSM, and Dow pursuant to the West Virginia Uniform Fraudulent Transfers Act ("Act"), West Virginia Code 40-1A-1 et seq.

Plaintiff is the Liquidating Trustee ("Trustee") of the App Fuels Creditors Trust ("Creditors Trust").  The Trustee oversees the Creditors Trust, which was established under the Joint Plan of Orderly Liquidation and Distribution (the "Plan") in certain bankruptcy cases jointly administered with Appalachian Fuels, LLC, (the "bankruptcy case") in the United States Bankruptcy Court for the Eastern District of Kentucky.

On June 11, 2009, three creditors of debtor Appalachian Fuels, LLC, filed the bankruptcy case through an involuntary petition for relief under Chapter 7.  At that time, the debtor's estate held claims against WV Alloys for avoidance and recovery of preferential transfers ("claims").  On July 14, 2009, the United States Trustee appointed an Unsecured Creditors Committee ("Committee").

At all relevant times the Globe defendants were controlled, directly or indirectly, by three individuals.  They are Jeff Bradley, Malcolm Appelbaum, and Stephen Lebowitz.  On September 25, 2009, after the claims arose, WVAM was formed.  On October 28, 2009, WV Alloys entered into an Asset Contribution Agreement and Membership Interest Subscription Agreement ("agreement") with GMI and WVAM.  Pursuant to the agreement, WV Alloys transferred all, or substantially all, of its operating assets to WVAM in exchange for 89.36 percent of

the aggregate total of all membership interests in WVAM ("membership interests"). GMI received the other 10.64 percent of the membership interests. Pursuant to the agreement, WVAM did not assume any liability related to any pending or threatened litigation or other claim, action, or proceeding against WV Alloys.

On October 30, 2009, the Board of Directors for WV Alloys declared a "dividend" to its sole shareholder, GMI, in the form of all the membership interests, which, as noted, comprised all or substantially all of WV Alloys' assets as of the membership interest transfer date. WV Alloys received no consideration in exchange for the membership interest transfer to GMI.

Also on October 30, 2009, the GMI Board of Directors declared a dividend to its sole shareholder, GSM, in the form of 100% of the membership interests it earlier received in WVAM. On November 5, 2009, GSM sold 49% of its newly acquired membership interests in WVAM to Dow. Additionally, Dow was listed as a party to receive notices under the October 28, 2009, agreement.

The Trustee alleges that the transfers described above were made in contravention of the Act. Specifically, it

contends that the transactions recited above had the effect of unlawfully removing substantially all of the assets of WV Alloys.  An offshoot of that effect was that WV Alloys became insolvent.  On April 11, 2011, the bankruptcy court entered an agreed order in the bankruptcy case conferring standing on the Committee to pursue recovery actions, including the claims, on behalf of the Appalachian Fuels, LLC, estate.

On June 28, 2011, consistent with that grant of authority, the Committee instituted an adversary proceeding to avoid the alleged unlawful transfers.  On January 24, 2012, the Trustee was substituted as the plaintiff in the adversary proceeding.  On June 29, 2012, the bankruptcy court entered an agreed judgment for the Trustee and against WV Alloys in the amount of $125,000.

On October 25, 2013, the Trustee instituted this action in the Circuit Court of Fayette County, which was later removed.  The second amended complaint alleged two claims under the Act, seeking declarations that the transfers made by WV Alloys be annulled and set aside, along with the "dividends" paid by WV Alloys and GMI.  It further seeks an award of exemplary damages and prejudgment attachment of the assets transferred.

Dow previously moved to dismiss the second amended complaint for failure to state a claim.  It contended that the Trustee's sole allegation against it stemmed from Dow's acquisition, by purchase, of a portion of the membership interests in WVAM from GSM.

The Trustee responded that it had pled its claims against Dow with the requisite degree of particularity.  The actual allegations found in the second amended complaint, as to Dow, were as follows:

> Dow "was listed as a party to receive notices under the" agreement. (Sec. Am. Compl. ¶ 18).
>
> Before the transfers under the agreement, Dow "knew or should have known that the [c]laims were going to be asserted against WV Alloys."  (Sec. Am. Compl. ¶ 21).
>
> The transfers "were engaged in by the Defendants to shield WV Alloys' assets from the [c]laims while, at the same time, maintaining ownership and control of those very same assets in WVA[M], an affiliated legal entity."  (Sec. Am. Compl. ¶ 23).
>
> "The Defendants engaged in a series of structured and orchestrated transactions . . . to transfer and shield assets of WV Alloys from" the claims in violation of the Act.  (Sec. Am. Compl. ¶¶ 38).

The court analyzed these allegations with the understanding that the Trustee sought to hold Dow accountable under Count One and Count Two of the second amended complaint. Count One pled a claim pursuant to section 40-1A-4 of the Act. Count Two pled a claim pursuant to section 40-1A-5.  (Memo. Op.

5

and Ord. at 20 (Apr. 24, 2014)).  The court noted at the outset

that the generic use of the term "Defendants" was troubling

inasmuch as the second amended complaint elsewhere used the term

in a manner relating only to WV Alloys, GMI, GSM and WVAM.

(See, e.g., id.; Sec. Am. Compl. ¶¶ 4, 5).

Assuming the term was intended to refer to Dow as

well, the court concluded that the well-pleaded factual

allegations of the operative pleading would only give rise to a

belief that Dow was entitled to receive notices of the

transfers.  The court concluded, "That minimalistic contention

will not suffice for purposes of pleading a claim under the Act,

especially in light of the rigorous Rule 9(b) standards."

The court thus conditionally granted Dow's motion to

dismiss, with the Trustee given leave to plead anew its claims

against Dow under the Act on or before May 10, 2014.  On May 12,

2014, the Trustee filed its third amended complaint.  This new

operative pleading has changed the factual allegations against

Dow, inter alia, to the following:

> Dow "was listed as a party to receive notices under
> the" agreement. (Third Am. Compl. ¶ 16).

> Prior to the transfers preceding the November 5, 2009,
> acquisition by Dow from WVA[M], WV Alloys, GMI, GSM
> and Dow "knew or should have known that the Claims
> were going to be asserted against WV Alloys." (Id. at
> ¶ 21).

"At the time it acquired its interest in WVA[M], Defendant Dow knew that (i) Defendants WV Alloys, WVA[M], GMI and GSM were purporting to transfer substantially all of the assets of WV Alloys to WVA[M] free from "any liability related to any pending or threatened litigation or other claim, action or proceeding against GMI or WV Alloys," as described in Schedule II of the Agreement, and (ii) Defendant WV Alloys and GMI had transferred all of their interest in GSM, for no consideration." (Id. at ¶ 28).

In the instant dispositive motions, the defendants assert that the Trustee has yet failed to state claims upon which relief may be granted.

II.

A.    Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon

7

which it rests.'"   Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957),

overruled on other grounds, Twombly, 550 U.S. at 563); see also

Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).

In order to survive a motion to dismiss, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"   Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S.

at 570); see also Monroe v. City of Charlottesville, 579 F.3d

380, 386 (4th Cir. 2009).

        Application of the Rule 12(b)(6) standard requires

that the court "'accept as true all of the factual allegations

contained in the complaint . . . .'"   Erickson, 127 S. Ct. at

2200 (quoting Twombly, 127 S. Ct. at 1965); see also South

Carolina Dept. Of Health And Environmental Control v. Commerce

and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004)

(quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).

The court must also "draw[] all reasonable . . . inferences from

th[e] facts in the plaintiff's favor . . . ."   Edwards v. City

of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

B.   Analysis


### 1. Dow's Motion to Dismiss


Akin to the predecessor pleading, Counts One and Two of the third amended complaint pled claims, respectively, pursuant to section 40-1A-4 and 40-1A-5 of the Act.

Regarding Dow's motion to dismiss, the Trustee has clarified in its briefing in response that it seeks only an adjudication that Dow does not qualify as a good faith transferee pursuant to section 40-1A-8(b)(2) of the Act.  (See Resp. at 5 "[T]he Third Amended Complaint only includes additional factual allegations to clarify Plaintiff's claim that, because Defendant . . . [DOW] is not a good faith transferee of a membership interest in Defendant WVAM pursuant to W.Va. Code §40-1A-8(b)(2), a judgment rendered against the Globe Defendants under W.Va. Code §§ 40-1A-4 or 40-1A-5 may be enforced against the interest of Defendant . . . [DOW] in WVAM."); id. at 12 ("The above alleged 'badges of fraud' are more than sufficient to establish an actionable claim against the Globe Defendants under W.Va. Code §40-1A-4 and a claim against Defendant [DOW] under W.Va. Code § 40-1A-8(b)(2).")).

Section 40-1A-8(b)(2) of the Act provides the

following:

> [T]o the extent a transfer is voidable in an action by
> a creditor under [section 40-1A-7(a)(1)[1]], the
> creditor may recover judgment for the value of the
> asset transferred, as adjusted under subsection (c) of
> this section, or the amount necessary to satisfy the
> creditor's claim, whichever is less. The judgment may
> be entered against:
>
> . . . .
>
> (2) Any subsequent transferee other than a good
> faith transferee who took for value or from any
> subsequent transferee.

W. Va. Code § 40-1A-8(b)(2).

The Trustee's complaint is admittedly not a model of

clarity on the point.  For example, it nowhere references

section 40-1A-8(b)(2).  Nevertheless, it alleges, as noted, that

(1) Dow "was listed as a party to receive notices under the"

agreement, (Third Am. Compl. ¶ 16), (2) Dow knew or should have

---

[1] This section deals with the remedies for defrauded
creditors and provides as follows:

> (a) In an action for relief against a transfer or
> obligation under this article, a creditor, subject to
> the limitations in section eight of this article, may
> obtain:
>
> (1) Avoidance of the transfer or obligation to
> the extent necessary to satisfy the creditor's
> claim . . . .

W. Va. Code § 40-1A-7(a)(1).

known prior to November 5, 2009, that the Trustee's claims were going to be asserted against WV Alloys, and (3) on November 5, 2009, Dow knew that WV Alloys, WVAM, GMI and GSM were purporting to transfer substantially all of the assets of WV Alloys to WVAM free from any liability related to any pending or threatened litigation or other claim, action or proceeding against GMI or WV Alloys and WV Alloys and GMI had transferred all of their interest in GSM, for no consideration.  It is further alleged in related part as follows:

> Given the proximity of the November 5, 2009 transfer in WVA[M] to Dow, to the October 28, 2009 Agreement, Defendant Dow knew that Defendants WV Alloys, GMI and GSM were transferring substantially all of the assets of WV Alloys, such that creditors with claims in pending or threatened litigation against WV Alloys would be unable to obtain a satisfaction of their claims.

(Id. ¶ 47).  These allegations minimally suffice to support the limited declaration against Dow that the Trustee seeks.

It is, accordingly, ORDERED that Dow's motion to dismiss be, and hereby is, denied.[2]

---

[2] Dow additionally asserts that the claim against it is barred by the four-year statute of limitations.  The trustee instituted this action on October 23, 2013.  The parties agree that the applicable limitations period requires the action be instituted within four years of the alleged fraudulent transfer, the earliest of which would have occurred on October 28, 2009, the date of the agreement.  The action is timely irrespective of the technical amendments to the complaint coming after October 23, 2013.  See Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when

2.  Globe Defendants' Motion to Dismiss

The Globe defendants move to dismiss primarily on the following ground:

> [T]he Globe Defendants and WVA[M] . . . submit, quite
> simply, that, in light of (a) the $100,000,000 sum . .
> . [Dow] paid for its membership interests in WVA[M] .
> . . , and (b) the fact that this was but one part of a
> $175,000,000 transaction, that plaintiff's allegations
> in the TAC to the effect that the defendants entered
> into the subject transactions with the "actual intent"
> to "shield WV Alloys' assets from the Claims" -- viz.
> plaintiff's $125,000 claim — is starkly implausible on
> its face. Indeed, on these facts, any such allegation
> of such actual intent would be preposterous, for no
> rational actor would enter into a complex transaction
> of such economic magnitude in order to "delay or
> hinder" a creditor from collecting on such a
> comparatively infinitesimal claim. Would a homeowner
> transfer title to his $175,000 house with the "actual
> intent" to hinder the milkman from collecting on a
> $125 bill, when the transaction costs are sure to
> dwarf that latter sum? Plaintiff's allegations here
> are no less absurd.

(Memo. in Supp. at 6 (emphasis added)).

To the extent that this argument is anything more than a value judgment and cognizable as a true Twombly/Iqbal challenge, the Trustee adequately meets it.  It responds as follows, after discussing the badges of fraud either pled in, or reasonable inferred from, the third amended complaint:

------

. . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading[.]").  The limitations defense is thus not meritorious.

12

> [T]he allegations illustrate a structured sequence of
> integrated transactions that . . . culminat[ed] with
> Defendant . . . [Dow's] ultimate acquisition of 49% of
> the membership interests in Defendant WVAM . . . . The
> structured sequence of integrated transactions alleged
> in the Third Party [sic] Complaint rendered Defendant WV
> Alloys insolvent. There is more than sufficient
> information in the Third Amendment [sic] Complaint for the
> Globe Defendants to have fair notice of the claims
> asserted against them. Whether the asserted "badges of
> fraud" establish a violation of the W.Va. Code §40-1A-
> 4 is purely a question of fact to be determined by the
> jury.
>
> In fact, the structured sequence of integrated
> transactions appears to be specifically designed to
> insulate Defendants GSM and . . . [Dow] from liability
> exposure under the . . . [the Act], by giving each the
> ability to claim the defense of a 'subsequent
> transferee who took … from any subsequent transferee'.
> See, W.Va. Code §40-1A-8(b)(2). There does not appear
> to be any other logical or reasonable business purpose
> for the Globe Defendants to engage in the structured
> sequence of integrated transactions that they did,
> merely to sell a 49% interest in Defendant WVAM to
> Defendant [DOW]. Under the Agreement, the assets of
> Defendant WV Alloys were transferred to Defendant WVAM
> free from "any liability related to any pending or
> threatened litigation or other claim, action or
> proceeding against GMI or WV Alloys."

(Resp. at 11-12). The Trustee is correct. The allegations give

rise to a plausible claim against the Globe defendants under

Counts One and Two.[3] It is, accordingly, ORDERED that the Globe

defendants' motion to dismiss be, and hereby is, denied.

---

[3] The Globe defendants' only remaining ground for dismissal
arises out of their contention that the Trustee has failed to
allege that "WV Alloys did not receive 'reasonably equivalent
value' in . . . a trade of its assets for membership interests
in" WVAM. (Memo in Supp. at 8). The allegations surrounding the
structured transactions, and the reasonable inferences available
therefrom, suffice to fill that void.

13

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED:   September 9, 2014

John T. Copenhaver, Jr.
United States District Judge